ORIGINAL

BRIAN A. BENCZKOWSKI
Assistant Attorney General of the Criminal Division
Attorney for the United States,
Acting Under Authority Conferred by 28 U.S.C. § 515

KATHERINE A. RAUT
Trial Attorney
Criminal Division, Fraud Section
U.S. Department of Justice
1400 New York Avenue, NW
Washington, D.C. 20005
Telephone: (202) 616-2577
Facsimile: (202) 616-3511
Email:    katherine.raut@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

FILED IN THE
UNITED STATES DISTRICT COURT
DISTRICT OF HAWAII

JAN 1 6 2019

at 3 o'clock and 00 min. PM
SUE BEITIA, CLERK

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| UNITED STATES OF AMERICA, | CR. NO. 19 00008 SOM |
| Plaintiff, | INFORMATION |
| vs. | [18 U.S.C. § 371] |
| FRANK JAMES LYON, Aka "Jim Lyon," | |
| Defendant. | |

INFORMATION

THE UNITED STATES CHARGES:

At all times relevant to this Information, unless otherwise stated:

THE DEFENDANT AND REFERENCED INDIVIDUALS AND ENTITIES

1.      The defendant **FRANK JAMES LYON**, also known as "Jim Lyon", was a United States citizen and resident. **FRANK JAMES LYON** was a "domestic concern" as that term is

1

defined in the Foreign Corrupt Practices Act ("FCPA"), Title 15, United States Code, Section 78dd-2(h)(1), and a "United States person" as that term is defined in the FCPA, Title 15, United States Code, Section 78dd-2(i).

2. "Co-Conspirator 1," an individual whose identity is known to the United States, was a United States citizen and resident. Co-Conspirator 1 was a "domestic concern" as that term is defined in the FCPA, Title 15, United States Code, Section 78dd-2(h)(1), and a "United States person" as that term is defined in the FCPA, Title 15, United States Code, Section 78dd-2(i).

3. "Co-Conspirator 2," an individual whose identity is known to the United States, was a United States citizen who resided in the Federated States of Micronesia ("FSM"). Co-Conspirator 2 was a "domestic concern" as that term is defined in the FCPA, Title 15, United States Code, Section 78dd-2(h)(1), and a "United States person" as that term is defined in the FCPA, Title 15, United States Code, Section 78dd-2(i).

4. "State Agency," an entity whose identity is known to the United States, was a Hawaii governmental agency that received United States federal assistance in excess of $10,000 each year between at least in or around 2011 and in or around 2016 as part of a Federal program involving a grant.

5. "Co-Conspirator 3," an individual whose identity is known to the United States, was a United States citizen and resident. Co-Conspirator 3 was an employee of State Agency from at least approximately 2008 until at least approximately 2012.

6. "Engineering Company," an entity whose identity is known to the United States, was a privately-held United States engineering and consulting company headquartered in Honolulu, Hawaii and organized under the laws of Hawaii. Engineering Company was owned and controlled by **FRANK JAMES LYON** and Co-Conspirator 1. In or around and between 2006

2

and 2016, Engineering Company obtained contracts valued at approximately $7.8 million with the FSM government, including for an airport improvement project funded in large part by the United States Federal Aviation Administration ("FAA AIP Contract") and for project management. In or around 2012, Engineering Company obtained a contract with State Agency. Engineering Company was a "domestic concern" as that term is defined in the FCPA, Title 15, United States Code, Section 78dd-2(h)(1), and a "United States person" as that term is defined in the FCPA, Title 15, United States Code, Section 78dd-2(i).

7. "Micronesian Official 1," an individual whose identity is known to the United States, was a government official in the FSM Department of Transportation, Communications and Infrastructure who administered FSM's aviation programs, including the management of its airports. Micronesian Official 1 was a "foreign official" as that term is defined in the FCPA, Title 15, United States Code, Section 78dd-2(h)(2)(A).

8. "Micronesian Official 2," an individual whose identity is known to the United States, was a government official in the FSM Congress who served on a congressional committee with oversight over Engineering Company's FSM contracts. Micronesian Official 2 was a "foreign official" as that term is defined in the FCPA, Title 15, United States Code, Section 78dd-2(h)(2)(A).

## THE FOREIGN CORRUPT PRACTICES ACT

9. The FCPA makes it unlawful to act corruptly in furtherance of an offer, promise, authorization, or payment of money or anything of value, directly or indirectly, to a foreign official for the purpose of assisting in obtaining or retaining business for, or directing business to, any person.

## GENERAL ALLEGATIONS

10.  From in or around 2006 through in or around 2016, **FRANK JAMES LYON**, together with his co-conspirators, provided bribe payments to FSM officials totaling at least approximately $200,000 in order to obtain approximately $7.8 million in contract payments.

11.  From in or around 2011 through in or around 2016, **FRANK JAMES LYON**, together with his co-conspirators, provided bribe payments in cash to Co-Conspirator 3, for distribution to State Agency officials, totaling at least approximately $240,000 in order to obtain a $2.5 million contract.

## COUNT ONE

### CONSPIRACY TO VIOLATE THE FCPA AND TO PAY A BRIBE TO AN AGENT OF AN ORGANIZATION RECEIVING FEDERAL FUNDS

12.  The allegations contained in paragraphs one through 11 of this Information are re-alleged and incorporated by reference as if fully set forth herein.

13.  From in or around 2006 through in or around 2016, the exact dates being unknown to the United States, in the District of Hawaii, and elsewhere, the defendant,

**FRANK JAMES LYON**

did willfully, that is, with the intent to further the objects of the conspiracy, and knowingly, combine, conspire, confederate, and agree with others, known and unknown to the United States, to commit certain offenses against the United States, to wit:

   a.  being a domestic concern, to willfully make use of the mails and means and instrumentalities of interstate commerce corruptly in furtherance of an offer, payment, promise to pay, and authorization of the payment of any money, offer, gift, promise to give, and authorization of the giving of anything of value, to a foreign official or to a person, while knowing that all or

part of such money or thing of value would be and had been offered, given, or promised to a foreign official, for purposes of (i) influencing acts or decisions of such foreign official in his or her official capacity; (ii) inducing such foreign official to do or omit to do acts in violation of the lawful duty of such official; (iii) securing any improper advantage; or (iv) inducing such foreign official to use his or her influence with a foreign government or agencies or instrumentalities thereof to affect or influence acts or decisions of such government or agencies or instrumentalities, in order assist **FRANK JAMES LYON**, Engineering Company, and others in obtaining and retaining business for and with, and directing business to, Engineering Company and others, in violation of Title 15, United States Code, Section 78dd-2(a);

  b. being a United States person acting outside the United States, to willfully and corruptly make an offer, payment, promise to pay, and authorization of the payment of any money, offer, gift, promise to give, and authorization of the giving of anything of value, to a foreign official or to a person, while knowing that all or part of such money or thing of value would be and had been offered, given, or promised to a foreign official, for purposes of (i) influencing acts or decisions of such foreign official in his or her official capacity; (ii) inducing such foreign official to do or omit to do acts in violation of the lawful duty of such official; (iii) securing any improper advantage; or (iv) inducing such foreign official to use his or her influence with a foreign government or agencies or instrumentalities thereof to affect or influence acts or decisions of such government or agencies or instrumentalities, in order assist **FRANK JAMES LYON**, Engineering Company, and others in obtaining and retaining business for and with, and directing business to, Engineering Company, in violation of Title 15, United States Code, Section 78dd-2(i); and

  c. to corruptly give, offer, and agree to give anything of value to any person, with the intent to influence and reward an agent of an organization or of a State, local or Indian

tribal government, or any agency thereof, that received benefits in excess of $10,000 in any one-year period, under a Federal program involving a grant, contract, subsidy, loan, guarantee, insurance, and other form of Federal assistance, in connection with any business, transaction, and series of transactions of such organization, government, or agency involving anything of value of $5,000 or more, in violation of Title 18, United States Code, Section 666(a)(2).

## PURPOSE OF THE CONSPIRACY

14.     It was the purpose of the conspiracy for **FRANK JAMES LYON** and his co-conspirators to unlawfully enrich themselves by making corrupt payments to FSM officials and State Agency officials in order to obtain and retain contracts and to obtain contract payments for Engineering Company from the FSM and from State Agency.

## MANNER AND MEANS OF THE CONSPIRACY

15.     The manner and means by which **FRANK JAMES LYON** and his co-conspirators sought to accomplish the purposes of the conspiracy included, among other things, the following:

16.     **FRANK JAMES LYON**, together with his co-conspirators, discussed in person, via email, and via telephone their need and agreement to pay bribes to obtain and retain business and contracts from the FSM and State Agency and to obtain payments on those contracts.

17.     **FRANK JAMES LYON**, together with his co-conspirators, discussed in person, via email, and via telephone that they would pay bribes to FSM officials and State Agency officials to obtain and retain business and contracts from the FSM and State Agency and to obtain payments on those contracts, including via wire transfers.

18.     **FRANK JAMES LYON**, together with his co-conspirators, caused the transfer of funds from Engineering Company to **FRANK JAMES LYON's** personal bank account and withdrew cash from his personal bank account to pay cash bribes to FSM officials and State

Agency officials and to pay bribes in the form of vehicles, gifts, and entertainment for FSM officials.

19.     **FRANK JAMES LYON**, together with his co-conspirators, falsely classified Engineering Company expenses as "business development" and "marketing" when in fact those funds were used to pay bribes in the form of gifts and entertainment for FSM officials.

20.     **FRANK JAMES LYON**, together with his co-conspirators, used Engineering Company bank accounts and credit cards to pay bribes in the form of covering the costs of personal travel for FSM officials.

21.     **FRANK JAMES LYON**, together with his co-conspirators, caused Engineering Company to make corrupt payments to a relative of Co-Conspirator 3, totaling approximately $24,000, purportedly for services provided to Engineering Company by the relative of Co-Conspirator 3. However, the relative of Co-Conspirator 3 did not provide any services to Engineering Company. The purpose of the payments was for Co-Conspirator 3's participation in influencing the award of a State Agency contract in favor of Engineering Company. During this period, Co-Conspirator 3 was an employee of State Agency.

22.     **FRANK JAMES LYON**, together with his co-conspirators, caused Engineering Company to make corrupt payments to Co-Conspirator 3, totaling approximately $132,500, purportedly for marketing services provided to Engineering Company by Co-Conspirator 3. However, the purpose of the payments was for Co-Conspirator 3's participation in influencing the award of a State Agency contract in favor of Engineering Company.

//

//

//

## OVERT ACTS

23. In furtherance of the conspiracy and to accomplish its objects and purpose, at least one of the co-conspirators committed and caused to be committed, in the District of Hawaii, and elsewhere, at least one of the following overt acts, among others:

24. On or about December 28, 2010, **FRANK JAMES LYON** sent an email to Co-Conspirator 2 regarding Engineering Company's purchase of travel relating to the FAA AIP Contract and an unrelated side trip to Las Vegas, Nevada, including for Micronesian Official 1 and his wife. **FRANK JAMES LYON** stated that the side trip would be expensive, but also stated, "This is a huge (and very very very critical to get renewed) contract so I am not trying to save money – or god forbid – insult [Micronesian Official 1]."

25. On or about December 28, 2010, Co-Conspirator 2 sent an email in reply to the email in Paragraph 24, in which Co-Conspirator 2 stated that the Engineering Company employees on the trip could charge their trip to the FAA AIP Contract, concealing the Las Vegas side trip, but collecting per diem during that time.

26. On or about December 28, 2010, Co-Conspirator 2 replied again to the email thread referenced in Paragraphs 24 and 25, stating, "Please erase this entire email when you are done."

27. On or about March 31, 2011, **FRANK JAMES LYON** and his co-conspirators caused Engineering Company to make a corrupt payment of $4,000 to a relative of Co-Conspirator 3, purportedly for consulting services, when in fact the payment was intended to compensate Co-Conspirator 3 for influencing the award of a State Agency contract in favor of Engineering Company.

28. In or around 2012, before State Agency awarded a contract to Engineering Company, **FRANK JAMES LYON** entered into an agreement with Co-Conspirator 3 whereby,

after State Agency awarded the contract to Engineering Company, **FRANK JAMES LYON** would cause a portion of the State Agency contract payments to Engineering Company to be paid periodically to Co-Conspirator 3 to benefit Co-Conspirator 3 and certain State Agency officials who would have influenced the award of the State Agency contract to Engineering Company.

29. In or around 2012, Co-Conspirator 3 and certain State Agency officials caused State Agency to award a $2.5 million contract to Engineering Company in fulfillment of the corrupt agreement referenced in Paragraph 28.

30. In or around 2012, after Engineering Company was awarded the $2.5 million State Agency contract, **FRANK JAMES LYON** met with Co-Conspirator 3 in the District of Hawaii to provide a corrupt cash payment to Co-Conspirator 3, which **FRANK JAMES LYON** and Co-Conspirator 3 understood was in furtherance of the corrupt agreement referenced in Paragraph 28 to benefit Co-Conspirator 3 and certain State Agency officials who had served on the selection committee and influenced the award of the $2.5 million State Agency contract to Engineering Company.

31. In or around 2012, **FRANK JAMES LYON** and his co-conspirators purchased an automobile for Micronesian Official 1's personal use in order to obtain and retain business.

32. On or about July 8, 2013, Micronesian Official 1 sent an email to **FRANK JAMES LYON** to go look at a Ford truck to potentially purchase for him, which **FRANK JAMES LYON** forwarded to Co-Conspirator 1, stating, "[T]his is an example of things [I] have to do[.] [I] have to find a car, negotiate a price, figure out how to pay for it, get it on a ship to [P]ohnpei[, FSM.] [T]his is illegal[.] [I] can only do these things when people don't know what I am doing[.]"

33. In or around 2013, **FRANK JAMES LYON** met with Co-Conspirator 3 in the District of Hawaii to provide a corrupt cash payment to Co-Conspirator 3, which **FRANK JAMES**

**LYON** and Co-Conspirator 3 understood was in furtherance of the corrupt agreement referenced in Paragraph 28 to benefit Co-Conspirator 3 and certain State Agency officials who had served on the selection committee and influenced the award of the $2.5 million State Agency contract to Engineering Company.

34.   On or about January 20, 2014, **FRANK JAMES LYON** and his co-conspirators caused a wire transfer in the amount of approximately $3,902.99 to be sent from a bank account controlled by **FRANK JAMES LYON** to the University of Hawaii to pay tuition for a relative of Micronesian Official 1.

35.   On or about April 11, 2014, **FRANK JAMES LYON** and his co-conspirators caused a wire transfer in the amount of approximately $3,599.98 to be sent from a bank account controlled by **FRANK JAMES LYON** to the University of Hawaii to pay tuition for a relative of Micronesian Official 1.

36.   In or around 2014, **FRANK JAMES LYON** met with Co-Conspirator 3 in the District of Hawaii to provide a corrupt cash payment to Co-Conspirator 3, which **FRANK JAMES LYON** and Co-Conspirator 3 understood was in furtherance of the corrupt agreement referenced in Paragraph 28 to benefit Co-Conspirator 3 and certain State Agency officials who had served on the selection committee and influenced the award of the $2.5 million State Agency contract to Engineering Company.

37.   On or about April 6, 2015, in order to destroy evidence of the corrupt payments, **FRANK JAMES LYON** instructed an Engineering Company information technology consultant to automatically delete his emails after five days.

38.   In or around June 2015, **FRANK JAMES LYON** and Micronesian Official 1 instructed Co-Conspirator 2 to draft a request for qualification document seeking bids for an FSM

project management contract ("PMU Contract"), including drafting selection criteria to favor Engineering Company in order to obtain an improper business advantage and win the PMU Contract.

39. On or about July 2, 2015, shortly before traveling to Micronesia, **FRANK JAMES LYON** withdrew $6,000 cash from an Engineering Company bank account in Hawaii for the purpose of paying a cash bribe to Micronesian Official 1 and/or Co-Conspirator 3 for the benefit of Co-Conspirator 3 and State Agency officials.

40. On or about July 3, 2015, shortly before traveling to Micronesia, **FRANK JAMES LYON** withdrew $2,000 cash from an Engineering Company bank account in Hawaii for the purpose of paying a cash bribe to Micronesian Official 1 and/or Co-Conspirator 3 for the benefit of Co-Conspirator 3 and State Agency officials.

41. On or about December 9, 2015, **FRANK JAMES LYON** sent an email to Co-Conspirator 1 stating that "[Micronesian Official 1] is asking for $5K/month .... So you and I will have to work together on spending & get agreement with [another Engineering Company executive] on guidelines on what goes into [marketing]."

42. In or around 2015, **FRANK JAMES LYON** met with Co-Conspirator 3 in the District of Hawaii to provide a corrupt cash payment to Co-Conspirator 3, which **FRANK JAMES LYON** and Co-Conspirator 3 understood was in furtherance of the corrupt agreement referenced in Paragraph 28 to benefit Co-Conspirator 3 and certain State Agency officials who had served on the selection committee and influenced the award of the $2.5 million State Agency contract to Engineering Company.

43. In or around 2015, **FRANK JAMES LYON** and his co-conspirators purchased an automobile for Micronesian Official 1's personal use in order to obtain and retain business.

44. On or about April 15, 2016, **FRANK JAMES LYON** stated in an email that he intended to pay for an apartment for Micronesian Official 2 and that Micronesian Official 2 "handles the infrastructure committee – which I need to approve our $500K contract week [of] [M]ay 11."

45. On or about December 12, 2016, **FRANK JAMES LYON** and his co-conspirators caused Engineering Company to transmit $2,500 to Co-Conspirator 3, purportedly for marketing services, when in fact the payment was intended to compensate Co-Conspirator 3 for influencing the award of a State Agency contract in favor of Engineering Company.

46. In or around 2016, **FRANK JAMES LYON** met with Co-Conspirator 3 in the District of Hawaii to provide a corrupt cash payment to Co-Conspirator 3, which **FRANK JAMES LYON** and Co-Conspirator 3 understood was in furtherance of the corrupt agreement referenced in Paragraph 28 to benefit Co-Conspirator 3 and certain State Agency officials who had served on the selection committee and influenced the award of the $2.5 million State Agency contract to Engineering Company.

All in violation of Title 18, United States Code, Section 371.

Dated:   January 16, 2019, at Honolulu, Hawaii

BRIAN A. BENCZKOWSKI
Assistant Attorney General of the Criminal Division
Attorney for the United States,
Acting Under Authority Conferred by 28 U.S.C. § 515


ROBERT A. ZINK
Acting Chief
Criminal Division, Fraud Section
U.S. Department of Justice

Dated:   January 16, 2019, at Honolulu, Hawaii

BRIAN A. BENCZKOWSKI
Assistant Attorney General of the Criminal Division
Attorney for the United States,
Acting Under Authority Conferred by 28 U.S.C. § 515


ROBERT A. ZINK
Acting Chief
Criminal Division, Fraud Section
U.S. Department of Justice

_____
Katherine A. Raut
Trial Attorney


UNITED STATES v. FRANK JAMES LYON
Cr. No. _____
"Information"

13