```
 1                 IN THE UNITED STATES DISTRICT COURT

 2                    FOR THE DISTRICT OF HAWAII

 3
     UNITED STATES OF AMERICA,      ) CR 19-00008 SOM
 4                                  )
                Plaintiff,          ) Honolulu, Hawaii
 5        vs.                       ) May 13, 2019
                                    )
 6                                  ) SENTENCING
     FRANK JAMES LYON,              )
 7        Aka "Jim Lyon,"           )
                                    )
 8                Defendant.        )
     _____)
 9

10                     TRANSCRIPT OF PROCEEDINGS
                 BEFORE THE HONORABLE SUSAN OKI MOLLWAY
11                   UNITED STATES DISTRICT JUDGE

12
     APPEARANCES:
13
     For the Government:       KATHERINE A. RAUT, AUSA
14                            U.S. Department of Justice
                              Criminal Division - Fraud Section
15                            1400 New York Avenue, NW
                              Washington, DC 20005
16
     For the Defendant:        LYLE S. HOSODA
17                            ADDISON D BONNER
                              ERIKA L. T. AMATORE
18                            Hosoda & Bonner
                              Three Waterfront Plaza
19                            500 Ala Moana Boulevard Suite 499
                              Honolulu, Hawaii 96813
20
     Also Present:            ARYN NOHARA, FBI Special Agent
21
     Official Court Reporter: Debra Read, RDR
22                            United States District Court
                              300 Ala Moana Boulevard
23                            Honolulu, Hawaii 96850
                              readit3949@gmail.com
24
     Proceedings recorded by machine shorthand, transcript produced
25   with computer-aided transcription (CAT).
```

```
1    MONDAY, MAY 13, 2019                          2:14 P.M.

2              THE COURTROOM MANAGER:  Criminal 19-00008 SOM,

3    United States of America versus Defendant(1) Frank James Lyon,

4    also known as Jim Lyon.

5         This case has been called to the sentencing to Count 1 of

6    the felony information.

7         Counsel, please make your appearances for the record.

8    Please speak into a microphone.

9              MS. RAUT:  Afternoon, Your Honor.

10        Katherine Raut on behalf of the United States joined by

11   FBI Special Agent Aryn Nohara.

12             THE COURT:  Okay.  Good afternoon.

13             MR. HOSODA:  Good afternoon, Your Honor.

14        Lyle Hosoda, Addison Bonner, and Erika Amatore appearing

15   on behalf of the defendant Frank James Lyon.  May the record

16   also reflect the presence of Mr. Lyon.

17             THE COURT:  Okay.  Thank you very much.  You can be

18   seated.

19        Before we get to the presentence report, I did want to

20   note that I have a stipulation that was approved by me revising

21   the plea agreement, and that is signed not only by counsel for

22   both the government and the defense, but also by the defendant

23   himself, right?

24             MR. HOSODA:  Yes, Your Honor.

25             THE COURT:  Okay.  Okay.  Then I would like to hear
```

1   from Mr. Lyon whether he has reviewed the Presentence

2   Investigation Report.

3        Have you had a chance to go over that?

4             THE DEFENDANT:  Yes, I have, Your Honor.

5             THE COURT:  Now, the lawyers are required to tell me

6   if they have objections to the report.  Your lawyer did file a

7   sentencing statement saying that you had no objections to the

8   report, but asking for some pretty much factual amendments.

9   Those amendments have been made.

10       Did you have objections that you thought your lawyers

11  should have told me about but they failed to do that?

12            THE DEFENDANT:  I don't have any objections, Your

13  Honor.

14            THE COURT:  Okay.  You can sit down.

15       Mr. Hosoda, am I correct that the comments that were made

16  in the defense sentencing statement have been adequately

17  addressed from your point of view in the final presentence

18  report?

19            MR. HOSODA:  Yes, they have, Your Honor.

20            THE COURT:  Okay.  Now, the government filed a

21  sentencing statement.  My understanding is that the government

22  has no objections to the PSR.

23            MS. RAUT:  That's correct, Your Honor.

24            THE COURT:  Okay.  Then I am adopting the

25  Presentence Investigation Report.  This will serve as my set of

UNITED STATES DISTRICT COURT

1   findings for purposes of sentencing.  It will be filed under

2   seal but will remain available to the lawyers on both sides if

3   they need to refer to the document for future proceedings.

4         I am accepting the plea agreement as revised in the

5   stipulation filed on April 23rd of this year.

6         Relying on the PSR, I conclude that under the advisory

7   sentencing guidelines, Mr. Lyon falls at total offense level

8   25, Criminal History Category I.

9         By statute, the maximum prison term that could be imposed

10  is 5 years.  The guidelines suggest a prison term between 57

11  and 60 months.

12        Supervised release following any prison term is set at a

13  maximum of 3 years by statute with the guidelines suggesting 1

14  to 3 years of supervised release.

15        Probation is not contemplated by the sentencing

16  guidelines, but if that were the sentence, by statute it would

17  have to be between 1 and 5 years.

18        The maximum fine that could be included in the sentence is

19  set by statute at $250,000 with the guidelines suggesting that

20  if a fine is imposed, it begin at $20,000, going up to

21  $200,000.

22        Whether there is a fine or not, there is a mandatory $100

23  special assessment.

24        Mr. Hosoda, any dispute with what I've announced so far?

25            MR. HOSODA:  No dispute, Your Honor.


UNITED STATES DISTRICT COURT

1          THE COURT:  Ms. Raut?

2          MS. RAUT:  No dispute.

3          THE COURT:  Okay.  Then I think I would like to hear

4   from the government on its motion for downward departure.

5      I did review the government's motion and I note that the

6   government is recommending a sentence between 41 and 51 months.

7          MS. RAUT:  That's correct, Your Honor.

8          THE COURT:  Did you want to add anything to the

9   record regarding the government's motion?

10         MS. RAUT:  I would just reemphasize as stated in the

11  government's motion that this defendant did cooperate and

12  that's the basis for the motion and the reason the government

13  recommends a 3-level downward departure; however -- and that

14  cooperation included voluntarily speaking with the government,

15  admitting to his participation in the conduct, and providing

16  voluminous documents to the government.

17     But I would also note that the cooperation was limited in

18  certain extent as well.  The defendant only came in to admit to

19  his conduct after the government provided a reverse proffer

20  wherein overwhelming evidence of the defendant's guilt was

21  presented to him.

22     The -- additionally, the cooperation and the substantial

23  assistance towards the prosecution of another individual, while

24  helpful, I would note that the government also had significant

25  evidence of that defendant's guilt prior to the cooperation.

1        And furthermore, the defendant had contact with that

2    individual during the period after which the government had

3    been in communication with the defendant and had given the

4    reverse proffer and before the defendant signed the cooperation

5    agreement and pled guilty very soon thereafter.  During that

6    period, we understand that there were approximately six calls

7    made by the defendant to the other individual who the defendant

8    was aware the government was seeking his cooperation with

9    respect to, and that's the government official Master Halbert

10    who has also pleaded guilty in this matter.

11        THE COURT:  So one of the things that the defense

12    has noted is that Mr. Halbert appears to have a guideline range

13    considerably lower than even what the government is

14    recommending with its motion for downward departure.  Would you

15    like to address that?

16        As you know, one of the things I need to do is to avoid

17    unwarranted disparities in sentencing, so I would very much

18    like to hear the government's discussion of why Mr. Lyon should

19    get a sentence in the range of 41 to 51 months while

20    Mr. Halbert, at least in the guideline range, has a 19- to

21    24-month guideline range.

22        MS. RAUT:  Sure.  So Mr. Lyon is an individual who

23    has admitted to paying bribes to receive approximately

24    $10 million worth of contracts for his company.  He stated that

25    the bribes that he paid kept his company afloat.

1        I would also note that the charged conduct is probably

2   less than the actual conduct, the bribery, which is admitted in

3   the defense filings to this being something that was going on

4   long before what was charged with -- you know, this was the way

5   this business -- that this individual and his father conducted

6   their business throughout the business.

7        So the guidelines range in that sense is lower, that it

8   doesn't capture the full conduct.

9        And furthermore, this defendant was paying bribes as a

10  U.S. individual for contracts that were in large part funded by

11  U.S. federal grant money.  He knew what he was doing.  He

12  admitted as much in the 2013 emails that the defense cites.  He

13  says, "I know my conduct is illegal" in those emails and

14  he -- that's years after the scheme had began.

15       And the scheme continued for years after that.  In fact,

16  he instructed the deletion of his emails as part of his effort

17  to cover up his illegal conduct.  He took several actions

18  indicating that he, as the owner of a business, actively

19  participated in conduct that he knew was illegal and carried it

20  out to win millions of dollars worth of contracts, as compared

21  to Mr. Halbert, who I would note is already -- has begun --

22  self-surrendered and begun to serve his sentence.

23       So he will certainly be incarcerated for some period of

24  time.  He -- his guidelines are lower based on the fact that

25  he's charged with a different crime.  The conduct, while

1    certainly overlapping, is not necessarily comparable.

2          His guidelines are based on the international movement of

3    bribe money and so it does not capture the full bribe payment

4    amount, whereas Mr. Lyon is charged with the payment of the

5    bribes, the FCPA violation, as well as the 18 U.S.C. 666

6    violation.  And, I think it's difficult to use that as a

7    comparison given the different statutes under which they're

8    charged in the different positions.

9          THE COURT:  Okay.  Thank you.

10   Mr. Hosoda.

11         MR. HOSODA:  Thank you, Your Honor.

12         I look at it a little bit differently.  I mean, if you

13   take all this in background and context, Mr. Lyon was

14   represented by Mike Purpura at the time.  I was involved pretty

15   quickly after that because I was representing some of the

16   company employees at the time.  But there was a long period of

17   time there, prior to the proffer, that there was nothing going

18   on, no prosecution.

19         When things -- Mr. Purpura, very clear, was in discussion

20   with the government and told them -- told the government that

21   cooperation was an open discussion and they basically waiting

22   for the opportunity to talk with him.

23         So to say that all this time went by and put it on

24   Mr. Lyon is not accurate.

25         Also, once he did say that he was cooperating, he

1    cooperated in full.  And it wasn't limited in any way in terms

2    of he answered each and every one of their questions at least

3    two lengthy interviews.

4        Not only that, but when it came time to turn over

5    electronic information -- and in these days it's not only

6    voluminous, but it's very costly -- Mr. Lyon paid for all of

7    the turning over of all of that electronic information and gave

8    them any and all information that they requested.

9        And it is his cooperation that led to the indictment and

10   the plea of this individual.

11       And in addition, there is another individual, at least

12   one, that is now being seriously investigated as a result of

13   his cooperation.

14       So all things considered, Your Honor, I think this is

15   worthy of not only the downward amount that the government is

16   requesting, but certainly in a situation where Mr. Lyon is the

17   individual, was he the one who sought out to bribe?  Or was it

18   the other individual who's the government official that

19   approached him, as we have provided with emails where basically

20   he was told that in order to get contracts, he would have to do

21   certain things?  And that became a part of and the way of his

22   life.

23       So in terms of comparison, I don't think there's any

24   comparison; that he should be entitled not only to the downward

25   departure, but a further variance at least to the point of the

1    other individual as well as -- and I'd like to argue further

2    and I will later -- a further downward variance.

3         Thank you.

4         THE COURT:  Well, I think what might help me is

5    certainly I'm going to grant the government's motion to

6    recognize Mr. Lyon's substantial assistance as I calculate the

7    sentence.

8         But in granting it, I am not setting any number yet,

9    either for the substantial assistance credit or the overall

10   sentence.  So I would greatly appreciate having the attorneys

11   address the overall sentence.  I don't know if the government

12   has anything more than it's already stated in the motion for

13   downward departure.  If it does, I'll hear from the government.

14        Now if not, I'll go back to Mr. Hosoda, and then I'll also

15   hear from Mr. Lyon, if he wants to say anything.

16        MS. RAUT:  Your Honor, with respect to the 3553(a)

17   factors, particularly as set forth in the defendant's

18   motion -- or sentencing statement, I should say the nature and

19   circumstances of this offense I think are laid out pretty

20   clearly already in the government's filing.

21        But again, this was spanning a decade, both foreign and

22   domestic officials that were bribed to get different contracts

23   that -- you know, for more than $10 million worth of business

24   for this company.  So this is a substantial amount of bribery

25   and a substantial time period that this defendant knew what he

1   was doing was illegal and continued to do so, where a sentence

2   of probation or anything on the very low end would reflect that

3   this is business as usual.  It would be a slap on the wrist for

4   such conduct that is so extensive over such a period of time

5   and for such a large amount of money.

6          And again, the significant evidence of the defendant's

7   knowing and active participation, despite it being illegal,

8   whether or not the government official was the one who

9   suggested the bribe payment, which is often the case, this

10  defendant did what it took to get that business to get ahead of

11  others who are playing fairly in the contracting process, to

12  pay bribes and to get the business and take it away from people

13  who are not paying bribes.

14         As to the history and characteristic of this defendant,

15  the government does not dispute that he has significant family

16  and community ties as reflected in his many letters of support,

17  that he has mental health issues -- not to diminish the

18  significance of that at all -- or financial and business

19  pressures that he may have been facing.  But none of those

20  factors is unique or so extraordinary as to warrant a variance.

21         Defendants are typically engaging in crime because of

22  financial or business pressures, real or perceived.  Most

23  defendants have family and community ties and will face, you

24  know, financial challenges from a period of incarceration.  But

25  that -- under 5H1.6, that is not something that should be

1    considered given that it is not unique or extraordinary as

2    compared to other defendants.

3              THE COURT:  Okay.  Mr. Hosoda.

4              MR. HOSODA:  Your Honor, thank you very much for the

5    opportunity to address the Court.  I thank you on behalf of

6    Mr. Lyon.  He thanks your staff and especially Ms. Darcie

7    Ing-Dodson for the thoroughness of what she's done, and also

8    the professionalism of the AUSA's office, and Ms. Raut in

9    particular.

10             I was moved this weekend because I attended the University

11   of Hawaii graduation ceremonies, and it was filled with, in

12   addition to thousands of leis, lots of heart, lots of

13   inspiration, and a lot of hope, much the same as 30 years

14   ago —— 30-plus years ago when Mr. Lyon graduated from Punahou

15   and then subsequently from the University of the Pacific.

16             No one in his world could have ever predicted or foreseen

17   that we would be here today.  Nearly a hundred letters ——

18   almost a hundred letters of support tell what a good person Jim

19   is and has been:  a good son, sibling, father, co-employee,

20   boss, youth athletic coach, teammate, community board member, a

21   heavy donator of time and money to various local charities, and

22   otherwise contributing member to our community.

23             He stands before you humbled and full of remorse for what

24   he's done.  He knew his conduct was a crime and did not know

25   how or have the strength on how to stop or get himself out of

1    it.  It would have taken him to completely remove himself and

2    throw everything away.

3         In the end, Your Honor, it's come to this place.  This

4    paid-for-play disease is contagious, easily caught, but

5    extraordinarily difficult to get rid of and extricate yourself

6    from.  The consequences for Mr. Lyon have been overwhelming and

7    dramatic.

8         His 91-year-old mother is sitting in the back, June Lyon.

9    She is going to have to leave her family home that she has

10   lived in for an entire generation because of this conduct.  At

11   that age, change is difficult.  Jim will not be there to care

12   for her in the event of incarceration.

13        His marriage to Nikaela, who's also here, his wife of over

14   25 years, is now in divorce -- divorce proceedings.  His

15   relationship with his children have all been compromised.  His

16   son, 16, Punahou sophomore, I believe, is also here.  Because

17   of what happened and because of how much energy and what he had

18   to do at work, these relationships were compromised.

19        Lanai & Associates dates back to the '60s.  Frank Lyon,

20   his father, poured his heart and soul into this company to

21   create what it was, and in its heyday there were hundreds of

22   employees with large jobs throughout the world.  Much of what

23   Jim did and aspired to do and aspired to be was as a result of

24   that relationship with his father.

25        He's repeatedly told me how very sorry he is and

1    apologizes to his family and all of those here, his friends,

2    his employees, and the community.  I am humbly asking and

3    respectfully requesting this Court consider a fine and

4    probation with specific terms for Mr. Lyon, now that he's lost

5    everything, enabling Mr. Lyon to work to pay his fine and to

6    follow through with making it right with his family and to the

7    community.

8         I've got reasons for the request, Your Honor, and these go

9    with 18 U.S.C. 3553 and the factors.  His past record, first of

10   all.  Taking back to the hope and the inspiration of those

11   graduation days, now that the company is in bankruptcy, he's

12   not -- Lyon has not officially filed, Your Honor, but he has

13   retained counsel and they have basically -- they're down to the

14   last few things before they actually file for bankruptcy.

15        He has hope and must give back to the community.  At 53,

16   he's ready.  With the front page news of the media talking

17   about unprecedented times in terms of business and other

18   ethics, Mr. Lyon wants to be a part of that change and he has

19   already outlined programs where, because of his situation, it

20   gives him an automatic audience.

21        As far as my research tells, this is the first FCPA case

22   here that's being sentenced.  We did a considerable amount of

23   research and it stands -- it's summarized in table form on

24   Table 6.  And Your Honor will see that, yes, when Ms. Raut

25   stands before you and says that there were millions in

1   contracts, if you look at what the Lyon Company had versus all

2   of these others, the 15 other cases, they're but a mere

3   fraction of what those other contracts and those other

4   defendants did.

5        And in terms of the bribe amounts paid, again a mere

6   fraction of what was paid in those cases.  That's not to

7   justify and he's not seeking to say anything other than that he

8   pled guilty, but the one that's closest to the present case,

9   Your Honor, and we've discussed that at length, is the *Bonds*

10  case, and it -- very similar facts.  And in that case,

11  probation was given.

12       There are two other cases in the 15 -- amongst the 15 that

13  also got probation.  And in the first two where they talk about

14  what the sentence was, we could not get further information,

15  but the sentence read time served.  In most situations in these

16  cases, time served is a very short amount of time and it's

17  essentially tantamount to probation.

18       In this case, as I've already outlined in opposition -- or

19  in support of the motion but further downward departure, it was

20  Mr. Lyon's cooperation that resulted in the plea of one and a

21  investigation of others.

22       Incarceration is not going to help Mr. Lyon.  You have

23  before you the mental health care record of Mr. Lyon, and based

24  upon his psychiatrist's recommendations and observations, being

25  in jail is not going to help.

1      I talked a bit about pay for play.  Mr. Lyon was not the

2   one seeking out government officials.  The officials and their

3   intermediaries sought him out.  And again, he inherited this

4   from his dad, and along with his natural and biological desire

5   to carry on the legacy was put into this world, and like I

6   said, it would have taken a great deal to get out.

7      Even though Mr. Lyon may have paid for jobs, that doesn't

8   diminish the fact that Lyon & Associates, a very competent and

9   reputable engineering firm, still had to do the job.  And by

10  all accounts in the community -- and there are many in the

11  development community standing and sitting behind me -- Lyon

12  did a very good -- they were very competent, very capable, and

13  very experienced in the engineering work that they did.

14     Jim did not do anything to hurt anyone physically.

15  Arguably, in this process he hurt himself mentally and

16  emotionally.

17     I acknowledge that a prison sentence sends a message, but

18  I will tell you that that will be one headline and maybe one

19  news cycle.  If given the opportunity and allowed, Mr. Lyon's

20  message will be carried in business ethics classes up at the

21  Shidler Business School and at the William S. Richardson School

22  of Law.  If he has to work to pay for his fine and to get back

23  into the graces of earning to pay for his kids' tuition at

24  Punahou and at Whitworth College, that will send a message for

25  now and a long time.

1       I'd ask that you downward variance off of the 355 -- 3553

2   factors and consider the entire record of this gentleman.

3       I would ask for probation and a fine because I think that

4   is consistent with the cases and Table 6 and certainly allowed,

5   and based upon this record, I think that it's justified.

6       Thank you.

7           THE COURT:  Did he want to be heard?

8           MR. HOSODA:  I think he does, Your Honor.

9           THE COURT:  I'll hear from him now.

10          THE DEFENDANT:  Thank you for the opportunity to

11  address the Court today.

12      I pled guilty to conspiracy to violate the Foreign Corrupt

13  Practices Act and to pay a bribe to an agent of an organization

14  receiving federal funds.  I accept the full responsibility for

15  my actions and apologize to the Court, the community, and

16  especially to my family, friends, and associates, who continue

17  to stand by me through this very difficult time.

18      This experience has taught me a lot, continues to do so on

19  many levels.  It is beyond humbling to lose everything -- my

20  business, my worldly possessions, and most of all the

21  relationships that I will never be able to get back.

22      To the employees, clients, and communities across the

23  globe that Lyon and Associates served for nearly six decades, I

24  apologize for letting you down.  This deed is solely my

25  responsibility.

1    I will never again take for granted the freedoms I have

2    and will do my very best to show my gratitude by first

3    accepting the consequences for my actions.

4        To my family and friends, I love you all for standing by

5    me.  I have so much gratitude for your unconditional support.

6    I take all your words and advice to heart and promise to

7    continue to be a healthy and positive contributing member of

8    society no matter what the outcome is today.

9        Thank you to my attorneys who have stood by me and helped

10   me to understand and navigate this process.

11       I also appreciate the professionalism and courtesy shown

12   by Pretrial Services, the probation office, the prosecutor, and

13   the FBI.

14       Your Honor, I'd like to share that for the past 30 years

15   that I've been with Lyon Associates, I truly embraced and loved

16   the work that we performed for communities around the world.

17   My passion has always been to help others without question and

18   to put all our effort into solving the most difficult

19   challenges for those most in need.

20       While this situation has taken away my ability to work and

21   earn a living, I know it will turn into something positive and

22   worthwhile.  It has to.

23       Thank you for the opportunity to speak, Your Honor.

24           THE COURT:  Okay.  Did you want to say anything

25   more, Ms. Raut, in response to what you've heard?

UNITED STATES DISTRICT COURT

1          MS. RAUT:  Nothing further, Your Honor.

2          THE COURT:  Okay.  So I have a job here and I have

3   to fashion a sentence, and in doing that, I need to meet a

4   number of goals.  One of those goals is punishment, but it's

5   not the only goal.

6       I'm also concerned about trying to prevent future crime.

7   I'm concerned about protecting the community, and I'm concerned

8   about addressing Mr. Lyon's needs.

9       At all costs, I have to avoid imposing a sentence that is

10  greater than necessary to achieve those goals.

11      I have studied the record in this case.  There's been

12  quite a bit of material provided by the defense, not only many,

13  many letters of support, but some information about how this

14  kind of case has been handled in other circumstances, other

15  courts.

16      I will say it's really hard for me to rely on a chart.

17  Every defendant is an individual and the judge sentencing that

18  individual has to take into account that person's individual

19  circumstances.  So it's really hard to compare people in

20  different circumstances, different times, and, you know, I know

21  Mr. Hosoda's looking at time served and says, well, lot of

22  times that might be a short time.  I don't know that.  Time

23  served could be actually a considerable time depending on

24  whether the sentencing judge is dealing with somebody who

25  didn't get granted bail from the start, for whom there were

1    various continuances.  Even if there was a guilty plea, it

2    might have taken some time for the guilty plea to be entered.

3          I have noted that many of the cases have years when the

4    cases -- the indictments were filed that was some time ago,

5    more than a decade ago for many of them.  And so it's really

6    hard for me to compare Mr. Lyon's situation with the situation

7    those other courts faced.

8          Notwithstanding what I've just said, though, I am very

9    concerned most particularly by the mental health challenges

10   that Mr. Lyon has faced.  Ms. Raut is correct that there are

11   many circumstances faced by Mr. Lyon that are actually not

12   unusual; lots of defendants come before every federal judge

13   with serious mental health problems.

14         I'm concerned that in Mr. Lyon's case, though, the mental

15   health problems are particularly severe.  You know, we often

16   deal with people who are so debilitated by medical problems,

17   either mental health issues or physical issues, that they

18   cannot function at all.

19         Mr. Lyon was functioning at a very high level and I

20   imagine that that was a great deal of stress.  And then

21   sometimes it appears that his mental health issues actually so

22   overwhelmed him that he could not really function.  It does

23   look as if some of the time that he was dealing with mental

24   health crises overlapped some of the time in issue here, and my

25   concern is that he will possibly have a particularly difficult

UNITED STATES DISTRICT COURT

1    time serving a sentence given the mental health issues.

2         Now, I hear Mr. Hosoda talk about all the contributions

3    that Mr. Lyon made to the community, to other people, and that

4    is definitely to his credit.  But I temper my consideration of

5    that with the knowledge that any financial contribution may

6    well have included ill-gotten gains, ill-gotten because they

7    flowed from a system of bribes being given in return for

8    business that made -- made for profit for the company that

9    Mr. Lyon was working in, first with his father and then after

10   his father's death, without his father.

11        That's a lot for me to put together.  I am not finding my

12   way to a probation sentence given the seriousness of the

13   conduct.

14        At the same time, the very serious mental health issues

15   and the difficulty that that may pose for Mr. Lyon during his

16   incarceration do lead me to think not that the Bureau of

17   Prisons cannot treat the condition, which it can -- it deals

18   with people with serious mental health problems all the time --

19   but Mr. Lyon has had access to good medical treatment and still

20   has problems because this mental health situation is a

21   retractable problem.  It's hard.  Medicine has not progressed

22   to where we can easily address mental health issues such as the

23   one that Mr. Lyon has.

24        And so I am proposing something lower than what the

25   government has suggested.  The government has suggested a

1   3-level departure down to a 41- to 51-month range.  Even at the

2   low end of that range, I am concerned enough about the

3   difficulty for Mr. Lyon of serving that sentence.  This is not

4   somebody who's inured to prison life.  He doesn't have a prison

5   sentence.  It will be particularly difficult.

6       I am proposing a 30-month sentence in custody, followed by

7   3 years of supervised release.

8       I'm not proposing a fine, but I must impose the $100

9   special assessment.

10      When Mr. Lyon completes his prison term, he has to follow

11  the mandatory and standard conditions of being supervised which

12  include the following:

13      He cannot unlawfully use a controlled substance.  He has

14  to have one drug test within 15 days of starting his

15  supervision period, and after that at least 2 more drug tests

16  with the maximum being 8 valid drug tests per month, unless

17  there's a positive drug test.  If there's a positive drug test,

18  probation can test up to one valid drug test every day.

19      You must cooperate in DNA collection as directed by your

20  probation officer.

21      And you must report to the probation office in the

22  district you're allowed to live in within 72 hours of being

23  released from prison custody, unless your probation officer

24  gives you different instructions.

25      Mr. Hosoda, there are other mandatory and standard

1    conditions.  If the reading of those others is waived, I will

2    move to special conditions; otherwise, I'm happy to read the

3    other mandatory and standard conditions.

4            MR. HOSODA:  We would waive, Your Honor.

5            THE COURT:  Okay.  Then moving to special conditions

6    of your release after you've completed your prison term:

7            You must participate in a substance abuse treatment

8    program and follow that program's rules and regulations.  Your

9    probation officer will consult with your treatment provider in

10   supervising your participation in the program.

11           So that supervision includes having input by the probation

12   officer into things like who provides the treatment, where, in

13   what format, for how long a time period, and how intensely.

14           Now, as part of your drug treatment program, you will have

15   drug testing and you must not try to obstruct or tamper with

16   any testing method.

17           You are prohibited from using marijuana, synthetic

18   marijuana, any product containing tetrahydrocannabinol or any

19   other products derived from a marijuana plant, including for

20   medicinal or business purposes, without advanced approval from

21   the court.

22           You are not allowed to possess or use alcohol during your

23   supervised release period, and you must warn other people you

24   live with or guests about this prohibition for your residence

25   and your property.

1          You must submit to alcohol testing at the direction of the

2    probation office.

3          You do have to give your probation officer any financial

4    information about yourself that is requested, and you must

5    authorize the release of information from third parties.  Your

6    probation officer may share your financial information with the

7    U.S. Attorney's Office.

8          You must participate in a mental health treatment program

9    and follow the rules and regulations of that program.  Again,

10   your probation officer, consulting with your treatment

11   provider, will supervise your participation in that program.

12   You must take all mental health medications, including

13   psychotropic medications prescribed by your treating physician.

14         You do have to give the probation officer a signed release

15   that authorizes credit checks.

16         You also have to provide an accurate financial statement

17   with supporting documents that list all of your sources and

18   amount -- amounts of income, your expenses, and any business

19   you own in whole or in part.

20         You must give the probation office any and all business

21   records, financial records, client lists, and other records

22   that relate to any business you own in whole or in part as

23   directed by your probation officer.

24         If you are self-employed, you have to hire a bookkeeper or

25   accountant to manage your business records, including all

UNITED STATES DISTRICT COURT

1    income and expenses, profits and losses, on a regular basis at

2    the discretion and direction of your probation officer.

3         You're subject to searches of yourself, your property,

4    house, residence, vehicle, papers, or office.  If you don't

5    submit to a search, supervised release can be revoked, which

6    means you could be brought back to court, and even though you

7    will have served your prison sentence, you could be sentenced

8    to more prison time.

9         You have to warn other people in areas subject to search

10   about this condition.  Your probation officer may rely on this

11   condition to conduct a search if the officer has a reasonable

12   suspicion that you have violated a supervised release condition

13   and that the areas to be searched have evidence of your

14   violation.  Any search has to be at a reasonable time and in a

15   reasonable manner.

16        Now, in proposing this sentence, I do recognize that you

17   did plead guilty to conspiring to violate the Foreign Corrupt

18   Practices Act and to pay a bribe to an agent of an organization

19   receiving federal funds.  I have calculated the guideline

20   range, taking into account the nature of your crime, the number

21   of bribes involved, the amount of the benefit you got, your

22   accepting responsibility for your crime, and your criminal

23   history.

24        Of great concern to me is the length of time in which you

25   and your father and others were conspiring to get contracts for

1   your family business in exchange for bribes to government

2   officials, both for the Federated States of Micronesia, and for

3   the State of Hawaii.  Now, these included cash payments and

4   gifts such as automobiles, travel expenses, entertainment, and

5   groceries for hundreds of thousands of dollars, and in return

6   you got millions of dollars in contract payments.  That was for

7   federal -- Federated States of Micronesia.

8       For the State of Hawaii, again, I'm looking at hundreds of

9   thousands of dollars in bribes to obtain millions of dollars in

10   a contract.

11      I'm very concerned that the long period of time and the

12   great dollar amounts involved may have made you think for

13   decades that, well, this is business as usual.  This is not

14   business as usual.  This is illegal activity,.

15      You've heard me talk about my concern about your mental

16   health issues and there are a number of diagnoses.  I know you

17   had a number of hospitalizations.  I fully recognize how

18   serious the situation is.  I'm concerned that drugs and alcohol

19   may have been a way that you were trying to deal with those

20   issues.  And obviously that was not a fruitful way for you to

21   deal with your health issues.  I'm very concerned about what

22   that may mean for your future.

23      But I'm also very much aware that the crime that brings

24   you before me is not everything there is to know about you.

25   You have lots of friends and family supporting you.  I know

1    that from the letters I've gotten.

2         I'm conscious that this is not a crime of violence that

3    brings you before me, and your only run-in with the criminal

4    justice system before this crime was a DUI conviction more than

5    a dozen years ago.

6         You have accepted responsibility for your actions.  You

7    have dealt with a number of pressures.  You clearly have the

8    intelligence, the education, the experience, the language

9    fluency that should help you to stand up on your feet again

10   when you complete your prison term.

11        You have been complying with your release conditions so

12   far.  You've passed all your drug and alcohol tests, and you do

13   appear to me to be committed to righting yourself, to going

14   forward in your life within the law.  And you did show that in

15   the manner in which you did assist the government which has

16   made the government file a motion to give you credit for that.

17        So that's the sentence I've proposed.  Is there a legal

18   challenge from the government?

19             MS. RAUT:  No, Your Honor.

20             THE COURT:  Mr. Hosoda?

21             MR. HOSODA:  May I have a moment to consult?

22             THE COURT:  Yes.

23        (Discussion between the defendant and defense counsel.)

24             MR. HOSODA:  Thank you for the opportunity to

25   consult.  The defendant thanks you very much for the very

UNITED STATES DISTRICT COURT

1    thorough and your proposed sentence, Your Honor.  Thank you.

2             THE COURT:  No legal challenge?

3             MR. HOSODA:  No legal challenge.

4             THE COURT:  Then that's the sentence:  30 months in

5    custody, 3 years of supervised release, no fine, but there is

6    the $100 special assessment.

7        Now, in your plea agreement, you did limit your right to

8    challenge this sentence, but if you believe you have a right to

9    appeal, then you need to talk to your lawyers right away

10   because it's just a 14-day appeal time.  That starts to run

11   when I file the judgment, which is just the document that puts

12   into writing this oral sentence.

13       The judgment is highly likely to be filed within the next

14   few days, this week or next week, so you should keep in touch

15   with your lawyers if you are considering that.

16       Now, I am happy to entertain requests for recommendations.

17   I don't know if -- with a sentence of this range, he's highly

18   likely to be kept here, I think.  But we can ask for another

19   facility, if you would like.

20       I'm happy to recommend mental health and substance abuse

21   treatment.  Did you want to ask me for a particular programs?

22            MR. HOSODA:  No, Your Honor.  Actually in discussing

23   it with Mr. Lyon, we really didn't think that that was a

24   possibility of him being kept here, so that would be our

25   preference, the defendant's preference, if --

UNITED STATES DISTRICT COURT

1          THE COURT:  Okay.  So the prison normally says two

2     years, but I'm pretty sure some people have managed to stay

3     here a little longer.  You want FDC Honolulu as the first place

4     recommended?  I will do that for ease of keeping his family

5     connections.

6          Just in case they don't allow him to stay here, did you

7     have another place?  I have to tell Mr. Lyon, I can make

8     recommendations.  The prison doesn't have to follow them, but

9     they try to.

10         So did you want me to recommend another facility?

11         MR. HOSODA:  Yes, Your Honor, Lompoc.

12         THE COURT:  Okay.  I'll recommend Lompoc.

13         Now, with a 30-month sentence, that's probably long enough

14    that he might qualify for the 500-hour Comprehensive Drug

15    Treatment Program.  I don't know if you want me to recommend

16    that, and I say that because they don't have that at FDC

17    Honolulu.  And if I put that in, it possibly might increase the

18    chance that they put him at Lompoc.

19         So what would you like me to do?  Is it 30 months?  Did he

20    need 36 months?

21         THE PROBATION OFFICER:  Your Honor, my understanding

22    is 37 months, but it's similar to your understanding about the

23    24 months because it's also my understanding where I think it's

24    not necessarily set that way, but that's what they try to do.

25         THE COURT:  Yeah.  He might not qualify anyway is my

1  point, so I don't know if you want to insert that

2  consideration, which may affect the designation of which

3  facility.

4           MR. HOSODA:  We'd ask that it not be included.

5           THE COURT:  Okay.  But, I mean, I'm happy to check

6  drug treatment.  They have generic drug treatment programs and

7  they might help him, so I'm happy to put that in.

8           MR. HOSODA:  That's what Mr. Lyon had indicated to

9  me.  If it's helpful, he would be willing to do it, but not if

10 he's -- if he doesn't qualify for it --

11          THE COURT:  Yeah, he might not qualify anyway, so,

12 okay, that's how we'll do that then.  I won't include that.

13          MR. HOSODA:  Thank you.

14          THE COURT:  Is there anything else you'd like me to

15 recommend?

16          MR. HOSODA:  Well, I'd like to be heard, if

17 possible, with respect to when he reports.

18          THE COURT:  Mittimus, right.  But on

19 recommendations?

20          MR. HOSODA:  No, Your Honor.

21          THE COURT:  Okay.  Mittimus then.  What would you

22 ask for in terms of when he would begin serving his sentence?

23          MR. HOSODA:  Your Honor, I'd like to respectfully

24 ask for July 1st.  And the reason for that is he continues to

25 work hard to wrap up both personal and financial and business

1   matters.  As I had mentioned earlier, he has retained the

2   services of bankruptcy counsel and they are going to follow

3   through with that.

4        As Your Honor knows, there's a meeting of creditors which

5   is required which you would have to be at 30 days following the

6   time that he files.  So that would give him a week --

7             THE COURT:  This is Mr. Hosoda's -- one of his many

8   specialties, so, you know, we often call him sort of the

9   bridge.  You can name any area of law; he works in it:  civil,

10  criminal, bankruptcy, what have you.

11            MR. HOSODA:  I have to pay my bills, Your Honor.

12       Yeah, respectfully, in order to finalize the company

13  matters as well as his personal matters, I would respectfully

14  request July 1st.

15            THE COURT:  So that is a 7-week stay.

16       Did you want to be heard on this?

17            MS. RAUT:  No, Your Honor.  I defer to your judgment

18  on this.

19            THE COURT:  Okay.  He's been compliant the whole

20  time, so I think we're okay.

21       Now, you have to continue to follow the conditions of your

22  release.  What happens if a report comes to me that you haven't

23  is we just yank the release status and you start serving your

24  prison term right away, which is often very disruptive for what

25  you may have planned.

1          So I will stay mittimus until July 1st.  I will require

2     Mr. Lyon to report by 10 A.M. to the facility -- did he want to

3     self-surrender?

4          MR. HOSODA:  Yes, Your Honor.

5          THE COURT:  And did he want to self-surrender by

6     getting himself to the facility as opposed to having the

7     marshals transport him when -- after he self-surrenders to the

8     marshals?

9          MR. HOSODA:  No.  He will report.

10         THE COURT:  Okay.  Then 10 A.M. at the facility that

11    you're assigned to.

12         If that is here in Honolulu, you just go to FDC Honolulu

13    which is right by the airport.  You report there by 10 A.M. on

14    July 1st.

15         If you get assigned to Lompoc or some other facility, it's

16    10 A.M. July 1 time at the facility, not Honolulu time.  Okay?

17         Okay.  Hold on.

18         MR. HOSODA:  Your Honor, may I have one more minute

19    to consult?

20         THE COURT:  Yes, yes.

21    (Discussion between defendant and defense counsel.)

22         MR. HOSODA:  Again, Your Honor, thank you for the

23    opportunity to consult.  I have -- after consulting with

24    Mr. Lyon, the preference would be for Lompoc because we believe

25    that the stay already may disqualify him and just have

UNITED STATES DISTRICT COURT

1   certainty as well as, you know, we've taken a look at the

2   facility as well, so I think that that would be his preference.

3           THE COURT:  Okay.  So you want me to change it to be

4   first choice is Lompoc.

5       Is there a second choice or no?  You don't have to.  No?

6   Okay.  So just Lompoc.  I mean, we could say the second choice

7   is a West Coast facility.  Do you want that?

8           MR. HOSODA:  Yes, Your Honor.

9           THE COURT:  Because of the ease of family visits?

10   Okay.  We'll do it that way.

11       Anything else?

12           MR. HOSODA:  Nothing further, Your Honor.

13           THE COURT:  Then thank you to both sides.  This is a

14   pretty complicated case.  I thank both sides for helping me.

15       Good luck to you, Mr. Lyon.  Thank you very much.

16           MS. RAUT:  Thank you, Your Honor.

17           (Proceedings concluded at 3:11 P.M.)

18

19

20

21

22

23

24

25

UNITED STATES DISTRICT COURT

1                    COURT REPORTER'S CERTIFICATE

2

3            I, DEBRA READ, Official Court Reporter, United

4    States District Court, District of Hawaii, do hereby certify

5    that pursuant to 28 U.S.C. §753 the foregoing is a complete,

6    true, and correct transcript of the stenographically reported

7    proceedings held in the above-entitled matter and that the

8    transcript page format is in conformance with the regulations

9    of the Judicial Conference of the United States.

10                    DATED at Honolulu, Hawaii, May 30, 2019.

11

12

13                         */s/ Debra Read*

14                       DEBRA READ, RDR

15

16

17

18

19

20

21

22

23

24

25


                         UNITED STATES DISTRICT COURT